**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**November 15, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

_____

CLARISSA HERNANDEZ; ROBERT
HERNANDEZ; SHANNON
WOODWORTH; DAVID GALLEGOS,

     Plaintiffs – Appellants,

v.

MICHELLE LUJAN GRISHAM; RYAN
STEWART,

    Defendants – Appellees.

No. 20-2176
(D.C. No. 2:20-CV-00942-JB-GBW)
(D. N.M.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **HOLMES**, Chief Judge, **BALDOCK**, and **MATHESON**, Circuit Judges.
_____

Plaintiffs-Appellants Clarissa and Robert Hernandez and Shannon Woodworth,

the parents of school-age children from New Mexico, and New Mexico State Senator

David Gallegos brought suit against New Mexico Governor Michelle Lujan Grisham

and New Mexico Secretary of Education Ryan Stewart ("Defendants-Appellees")

regarding New Mexico's remote-learning policies in response to the COVID-19

---

    \*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

pandemic. Specifically, Plaintiffs-Appellants alleged that the state's remote-learning policies in counties with high rates of COVID-19 violated students' substantive and procedural due process and equal protection rights under the United States Constitution and, for those students with disabilities, such as Ms. Woodworth's daughter, that remote learning violated guarantees of the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §§ 1400–1482, to provide a free appropriate public education ("FAPE").

The district court dismissed all of Plaintiffs-Appellants' claims. In its comprehensive, 167-page order, the district court systematically addressed each of the issues and ultimately denied Plaintiffs-Appellants' motion for a preliminary injunction and the court granted Defendants-Appellees' motion for summary judgment. Plaintiffs-Appellants appealed the district court's order. However, during the pendency of this appeal, New Mexico has continued to reassess its remote-learning policies and as of March 8, 2021, all New Mexico public schools have been allowed to resume full, in-person learning. As a result, Defendants-Appellees argue that this appeal is now moot.

Though the mootness issue that Defendants-Appellees raise does implicate our subject-matter jurisdiction, we need not reach that issue. That is because Plaintiffs-Appellants' appeal is fatally infirm on another threshold ground: specifically, Plaintiffs-Appellants' appellate briefing is so woefully inadequate—especially in light of the complicated constitutional issues at issue here and the district court's extensive analysis of them—that they have waived appellate review. Therefore, we

**affirm**—without any necessity of reaching the merits—the district court's grant of summary judgment to Defendants-Appellees.

To begin our analysis, however, we note that one significant deficiency of Plaintiffs-Appellants' briefing relates to their misguided attempt to challenge the district court's denial of their motion for a preliminary injunction. Taking this challenge at face value, we lack jurisdiction to consider it: Plaintiffs-Appellants' challenge to the district court's denial of their motion for a preliminary injunction is moot because, in the same order denying that motion, the court resolved the lawsuit against them with finality by granting Defendants-Appellees' motion for summary judgment. Therefore, we **dismiss** Plaintiffs-Appellants' appeal insofar as it challenges the district court's denial of their motion for a preliminary injunction.

**I**

This appeal stems from Plaintiffs-Appellants' challenges to Governor Lujan Grisham's closure of New Mexico public schools during the COVID-19 pandemic and the issuance by the New Mexico Public Education Department (the "PED") of Reentry Guidance providing for a phased school reopening based on local rates of COVID-19.

**A**

In response to the COVID-19 pandemic, on March 11, 2020, Governor Lujan Grisham declared a public health emergency in the State of New Mexico, invoking the full measure of her authority under the All Hazard Emergency Act, NMSA 1978, §§ 12-10-1 to -10, and the Public Health Emergency Response Act, NMSA 1978,

§§ 12-10A-1 to -19.  Pursuant to this authority, on March 13, 2020, Governor Lujan Grisham ordered all New Mexico public schools to close from March 16 to April 6, 2020, and when COVID-19 cases in New Mexico continued to increase, she extended the closure, ordering all public schools to close for the remainder of the 2019–2020 school year.

In the lead up to the 2020–2021 academic year, the PED worked with the Office of the Governor and the New Mexico Department of Health to develop a plan for a phased reopening of schools.  Using certain criteria, including daily cases and test positivity rates, to assess the spread of COVID-19 in New Mexico, the PED issued its official Reentry Guidance on July 24, 2020, requiring that school districts in New Mexico with higher rates of COVID-19 provide either fully remote or hybrid learning, while permitting full in-person learning for schools in districts with lower rates.[1]  The Reentry Guidance also allowed, but did not require, school districts in the fully remote category to provide in-person education to children with disabilities in groups of five children or fewer.

Applying the Reentry Guidance across the state, the PED required schools in several counties to begin the 2020 school year operating in a fully remote capacity, while other schools were permitted to resume in-person learning through either the hybrid or full reentry categories.

---

[1]    Though the PED issued the first Reentry Guidance on July 24, 2020, the district court in its order and judgment relied on the then-most updated version of the Reentry Guidance issued on November 24, 2020.

**B**

On September 16, 2020, Plaintiffs-Appellants brought this suit pursuant to 42 U.S.C. § 1983.[2]  Plaintiffs-Appellants are Clarissa and Robert Hernandez, the parents of four school-age children who live in a county in the remote-learning category; Shannon Woodworth, the parent of a school-age daughter with special needs in a county also in the remote-learning category; and David Gallegos, a member of the Board of Education for Eunice Public Schools, a remote-learning only county. Plaintiffs-Appellants sued Governor Lujan Grisham and Secretary of Education Ryan Stewart in their individual and official capacities,[3] alleging that in the ten New Mexico counties prohibited from resuming any form of in-person learning, the 2020 Reentry Guidance violated students' due process and equal protection rights.[4]

Additionally, Plaintiffs-Appellants alleged a violation of the IDEA, arguing that remote schooling prevented students with disabilities, such as Ms. Woodworth's daughter, from socializing with non-disabled students and thus prevented such

---

[2]     On September 17, 2020, Plaintiffs-Appellants filed an amended complaint to correct the caption—specifically, to correct the names of two of the parties.

[3]     Plaintiffs-Appellants voluntarily dismissed the State of New Mexico and Secretary of Health Kathyleen Kunkel from their suit.

[4]     Plaintiffs-Appellants sought class certification for similarly situated students, students with disabilities, and teachers and administrators in Chaves, Curry, Doña Ana, Eddy, Hidalgo, Lea, Luna, McKinley, Quay, and Roosevelt Counties. The district court concluded however that it likely would not grant class certification, and so this appeal relates only to the individual, named Plaintiffs-Appellants.

students from receiving a FAPE.  *See, e.g.*, *Fry v. Napoleon Cmty. Sch.*, 580 U.S. 154, 137 S. Ct. 743, 748–49 (2017) (explaining that the IDEA offers federal funds to states in exchange for the commitment to provide a FAPE to children with certain disabilities, and that under the IDEA, a FAPE comprises "special education and related services," including "both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction" (quoting 20 U.S.C. §§ 1401(9), (26), (29))); *see also Bd. of Ed. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 203 (1982) (holding that the IDEA establishes a substantive right to a FAPE for children with certain disabilities).

Plaintiffs-Appellants sought declaratory relief, a temporary restraining order, and preliminary and permanent injunctions "enjoining Defendants from prohibiting in-person instruction."  Aplees.' Supp. App., Vol. 1, at 28 (Pls.' Am. Compl. and Req. for TRO, filed Sept. 17, 2020).  Plaintiffs-Appellants also filed a separate Motion for a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunctive Relief on September 21, 2020.

On October 14, 2020, in *Hernandez v. Grisham (Hernandez I)*, 494 F. Supp. 3d 1044 (D.N.M. 2020), the district court issued an order on Plaintiffs-Appellants' September 21, 2020, motion for preliminary injunction and temporary restraining order, granting it in part and denying it in part.  Specifically, the court denied virtually all of the Plaintiffs-Appellants' requested relief—finding Plaintiffs-Appellants unlikely to succeed on the merits—but granted a narrow TRO under the

6

IDEA to correct Ms. Woodworth's daughter's individualized education plan ("IEP") to allow for in-person instruction because the local education agency had misinterpreted the Reentry Guidance as prohibiting in-person learning for students with special needs.[5]  *See, e.g.*, *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 137 S. Ct. 988, 994 (2017) ("The IEP is the means by which special education and related services are tailored to the unique needs of a particular child." (quotation omitted)).  Plaintiffs-Appellants did not interlocutorily appeal the district court's denial of their requested preliminary injunction in *Hernandez I*.  *See, e.g.*, 28 U.S.C. 1292(a)(1) (providing jurisdiction to hear appeals from "[i]nterlocutory orders . . . refusing . . . injunctions").

Following *Hernandez I*, on October 26, 2020, Defendants-Appellees filed their (second) motion to dismiss.[6]  They argued that the district court should dismiss

---

[5]  Specifically, the district court found that Ms. Woodworth was not required to first exhaust her administrative remedies under the IDEA before bringing her IDEA claim in federal court because her claim presented a purely legal question. Addressing Ms. Woodworth's IDEA claim, the district court concluded that because Ms. Woodworth's daughter was not progressing appropriately with remote instruction, "it is likely that she could demonstrate on the merits that she is not receiving a FAPE in violation of the IDEA"; so, the court ordered Secretary Stewart to direct the local education agency to amend Ms. Woodworth's daughter's IEP to allow for in-person instruction.  *See Hernandez I*, 494 F. Supp. 3d at 1148–50.

[6]  On October 5, 2020, Governor Lujan Grisham and Secretaries Kunkel and Stewart filed their first motion to dismiss the claims against them arguing that Plaintiffs-Appellants lacked Article III standing and failed to state a § 1983 claim. The district court agreed that Plaintiffs-Appellants lacked standing as to Secretary Kunkel and—consistent with Plaintiffs-Appellants' own stipulations of dismissal— the court dismissed Secretary Kunkel and the State of New Mexico from the case. *See Hernandez v. Grisham (Hernandez II)*, 499 F. Supp. 3d 1013, 1018 (D.N.M. 2020).

Plaintiffs-Appellants' constitutional claims because the Reentry Guidance is subject to and survives rational-basis scrutiny.  More specifically, they argued that the suspension of in-person learning is rationally related to the legitimate state interest of stopping the spread of COVID-19.  Defendants-Appellees also argued that the district court should dismiss Plaintiffs-Appellants' IDEA claim because the IDEA does not require in-person learning for students to receive a FAPE, and, moreover, the 2020 Reentry Guidance does not actually prohibit in-person education for special needs students and instead provides such students with the same opportunity as non-disabled students to participate in remote instruction.

After converting—with the parties' consent—Defendants-Appellees' motion to dismiss to a motion for summary judgment[7] and holding hearings on Plaintiffs-Appellants' motion for a preliminary injunction,[8] on December 18, 2020, the district court issued its order and judgment dismissing all of Plaintiffs-Appellants' claims.  In its 167-page order at issue here, the district court identified 12 separate issues and addressed each in turn, ultimately granting Defendants-Appellees' motion for

---

[7]    The district court asked the parties whether they would object to converting the second motion to dismiss into a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d).  Plaintiffs-Appellants and Defendants-Appellees both filed notices of non-objection, and the motion to dismiss was accordingly converted.

[8]    The district court held three days of hearings on Plaintiffs-Appellants' September 21, 2020, motion for a temporary restraining order, preliminary injunction, and permanent injunctive relief (the same motion addressed in *Hernandez I*) on November 19, November 20, and November 23, 2020.

summary judgment and again denying Plaintiffs-Appellants' motion for a preliminary injunction.

Specifically, on the constitutional claims, the district court concluded that Defendants-Appellees did not violate Plaintiffs-Appellants' procedural due process, substantive due process, or equal protection rights and granted summary judgment in favor of Defendants-Appellees. The district court first explained that under *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11 (1905), tiered scrutiny applies to constitutional claims during a national emergency situation, and if there is neither a fundamental right nor a suspect class at issue, courts will uphold governmental action that rationally relates to the government's public health objectives.

Turning specifically to Plaintiffs-Appellants' procedural due process claim, the district court reasoned that—even though New Mexico children possess a property right in their public education and deprivation of an *in-person* education has more than a de minimis effect on this property interest—"summary administrative action" is justified in emergency situations where the deprivation of property serves to protect public health and safety. *See Hernandez v. Grisham (Hernandez III)*, 508 F. Supp. 3d 893, 976–79 (D.N.M. 2020) (quoting *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 300 (1981)). The district court further explained that, even if COVID-19 is no longer an emergency, because the 2020 Reentry Guidance is a quasi-legislative document affecting the entirety of New Mexico, Plaintiffs-Appellants were not entitled to any additional due process such as individualized notice or hearings; the "general notice as provided by law" was

9

instead sufficient. *Id.* at 979–81 (quoting *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1261 (9th Cir. 1994)).

Next, the district court granted summary judgment on Plaintiffs-Appellants' substantive due process claim, declining to find that there is a fundamental right to an in-person education under the Constitution and instead concluding that the phased reopening of public schools satisfied rational-basis review and did not deprive Plaintiffs-Appellants of life, liberty, or property in such a manner that shocks the judicial conscience. In rejecting Plaintiffs-Appellants' argument that there is a fundamental right to an in-person education, the district court explained that Plaintiffs-Appellants offered no more than "vague and conclusory explanations," and "because [Plaintiffs-Appellants] do not explain how remote instruction deprives the Plaintiffs of a basic education and do not address how in-person instruction is 'deeply rooted in this Nation's history and tradition,'" they did not satisfy the requirement under *Washington v. Glucksberg*, 521 U.S. 702, 720–22 (1997), that they must provide the court with a "careful description of the asserted fundamental liberty interest." *Hernandez III*, 508 F. Supp. 3d at 986 (quoting *Glucksberg*, 521 U.S. at 720–21).

Thus, applying rational-basis review because the Reentry Guidance affects neither a suspect class nor a fundamental right, the district court concluded that "even if the Defendants seem more concerned about the spread to adults than the effective education of children," the prohibition on in-person schooling in certain counties is nonetheless still rationally related to the legitimate governmental purpose of

preventing the spread of the COVID-19 virus. *Id*. at 989–91. On the final constitutional claim, the district court found that Defendants-Appellees did not violate Plaintiffs-Appellants' equal protection rights because the Reentry Guidance is neutral on its face, and Plaintiffs-Appellants failed to show that the policy was discriminatory to either the disabled or non-disabled citizens of the New Mexico counties prohibited from providing in-person education.

Finally, turning to the IDEA claim, the district court concluded "Plaintiffs' IDEA claims cannot proceed, because [Ms.] Woodworth's IDEA claims are moot." *Id*. at 973. As the district court explained, because Ms. Woodworth's daughter's IEP team had already remedied the purely legal error that the court had directed the local education agency to correct in *Hernandez I*, 494 F. Supp. 3d at 1148–50, Ms. Woodworth would need to follow the administrative process to address any remaining issues; because she did not do so, the court lacked jurisdiction over her IDEA claim.[9]

---

[9]    Although the district court concluded that the IDEA claim was not properly before it because Ms. Woodworth's claim was no longer purely legal, and, therefore, was subject to the requirement of administrative exhaustion, the court went on to consider merits-based reasons for why the claim should be dismissed. For example, the district court concluded that Ms. Woodworth could not bring "claims pursuant to § 1983, because the IDEA includes a comprehensive enforcement scheme." *Hernandez III*, 508 F. Supp. 3d at 916, 994–95. Further, the district court determined that even though the IDEA may contemplate social and emotional goals, because of the individualized nature of IEPs, disabled students may still receive a FAPE even if they do not participate in in-person learning "because remote learning still allows these students to progress towards goals detailed in their IEPs." *Id*. at 916, 995–97; *see also Fry*, 137 S. Ct. at 749 (explaining that the IEP "serves as the 'primary vehicle' for providing each child with the promised FAPE" and is crafted for each individual child by a "team" of school officials, teachers, and parents to

Ultimately, after considering several additional issues that are not the subject of this appeal, the district court denied Plaintiffs-Appellants' motion for preliminary injunction and granted Defendants-Appellees' converted motion for summary judgment and dismissed the case. This appeal followed.

## C

Factual developments following the district court's order are also relevant to this appeal. In January 2021—before the parties submitted their merits briefs in this appeal—Governor Lujan Grisham announced that, on February 8, 2021, in-person learning could resume in every school district in New Mexico and the PED accordingly revised the Reentry Guidance to permit hybrid in-person learning across the state. This announcement was followed by a further revision announced by the PED on March 8, 2021, that all school districts could return to full-time, in-person learning with the goal that all schools would fully reopen by April 5, 2021. Based on this change in policy, Defendants-Appellees contend that this appeal is now moot.

---

"spell[] out a personalized plan to meet all of the child's 'educational needs'" (quoting 20 U.S.C. §§ 1414(d)(1)(A)(i)(II)(bb), (d)(1)(B))). Finally, the district court ruled that remote schooling satisfies the IDEA's "least restrictive environment" mandate that disabled students be educated "[t]o the maximum extent appropriate . . . with children who are not disabled," in a "regular educational environment," 20 U.S.C. § 1412(a)(5)(A), because "a regular educational environment or regular classroom is any learning environment where a child with disabilities has not been separated from his or her classmates without disabilities" and, here, both disabled and non-disabled children were being offered the same remote instruction, *Hernandez III*, 508 F. Supp. 3d at 916, 997–1005.

## II

"We review the denial of a motion for summary judgment de novo and apply the same standards as the district court." *Kelley v. City of Albuquerque*, 542 F.3d 802, 820 (10th Cir. 2008). "Summary judgment is appropriate if 'there is no genuine issue as to any material fact and . . . the [movant] is entitled to a judgment as a matter of law.'" *Id*. (quoting *Yaffe Cos., Inc. v. Great Am. Ins. Co.*, 499 F.3d 1182, 1185 (10th Cir. 2007)).

"We review [a] district court's decision to deny a preliminary injunction for abuse of discretion." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003). "Four factors must be shown by the movant to obtain a preliminary injunction: (1) the movant 'is substantially likely to succeed on the merits; (2) [the movant] will suffer irreparable injury if the injunction is denied; (3) [the movant's] threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.'" *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016) (quoting *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC,* 562 F.3d 1067, 1070 (10th Cir. 2009)).

## III

At the outset, we dismiss a portion of this appeal insofar as Plaintiffs-Appellants seek to challenge the district court's order denying their motion for a preliminary injunction because any such challenge is moot, and we accordingly lack jurisdiction to consider it. We otherwise affirm the district court's judgment. However, in doing so, we do not reach the merits. Instead, we conclude that the

13

major deficiencies of Plaintiffs-Appellants' briefing render meaningful review infeasible. More specifically, we conclude that, due to these deficiencies, Plaintiffs-Appellants have waived any arguments challenging the district court's order granting summary judgment. It is on that basis that we affirm.

## A

On appeal, Plaintiffs-Appellants train much of their fire on the district court's order denying their motion for a preliminary injunction. Insofar as Plaintiffs-Appellants' appeal relates to that injunctive order, however, we lack jurisdiction to consider it; that portion of Plaintiffs-Appellants' appeal is moot.

Specifically, Plaintiffs-Appellants purport to target the district court's denial of their motion for a preliminary injunction. They argue that they made a sufficient showing before the district court of the likelihood of success on the merits, the threat of irreparable harm, the absence of harm to the opposing parties, and the absence of any risk of harm to the public interest. Their Opening Brief has only one argument section, and it is captioned in a manner consistent with the operative standard for review of an order regarding a preliminary injunction. *See* Aplts.' Opening Br. at 10 ("Appellants Were Likely to Prevail on the Merits . . ." (bold removed)). Plaintiffs-Appellants contend that there is no rational basis for the prohibition on in-person learning and, consequently, the 2020 Reentry Guidance violates the due process and equal protection clauses of the Constitution and additionally violates the IDEA by prohibiting disabled students from receiving a FAPE.

Thus, Plaintiffs-Appellants frame the lion's share of their arguments to address the court's denial of their motion for a preliminary injunction. Indeed, the argument section of their Opening Brief is bereft of any discussion about why the district court erred in entering an order granting summary judgment to Defendants-Appellees—the order that resolved this case with finality on the merits. Indeed, the term "summary judgment" does not appear in their Opening Brief.

Taking this misguided line of argument at face value, we conclude that any such challenge is moot, and we do not have jurisdiction to consider it. Under Article III of the United States Constitution, our jurisdiction is limited to "cases" or "controversies." U.S. Const. art. III, § 2, cl. 1. When a case or controversy no longer exists, the appeal becomes moot, and we lose jurisdiction. This mootness analysis turns on whether we can afford meaningful relief and applies to our review of actions seeking declaratory or injunctive relief. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010) ("Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuit."); *Baker v. Bray*, 701 F.2d 119, 122 (10th Cir. 1983) ("[T]he claim upon which the request for a preliminary injunction was based . . . was dismissed by the district court, and this action certainly mooted the issue raised herein.").

Here, because the district court's grant of summary judgment was a final order resolving the merits of Plaintiffs-Appellants' claims, we can no longer grant preliminary relief. *See United States ex rel. Bergen v. Lawrence*, 848 F.2d 1502, 1512 (10th Cir. 1988) (explaining that a preliminary injunction is by its nature a

15

temporary measure intended to furnish provisional protection while awaiting a final judgment on the merits and so holding that the district court's entry of final judgment "superseded the preliminary injunction" and mooted an appeal as to it); *see also Rose v. Utah State Bar*, 444 F. App'x 298, 299 (10th Cir. 2011) (unpublished)[10] (dismissing appeal from the denial of a preliminary injunction "[b]ecause the underlying claims have been finally adjudicated by the district court's dismissal, [so] we can no longer grant preliminary relief").  Even if we reversed the district court's denial of the Plaintiffs-Appellants' motion for a preliminary injunction, "it would have no effect in the real world because [Plaintiffs-Appellant's grievances regarding that denial] have been superseded" by the district court's final order dismissing Plaintiffs-Appellants' claims on the merits.  *Rio Grande Silvery Minnow*, 601 F.3d at 1112.

In sum, we do not have jurisdiction to consider Plaintiffs-Appellants' appeal, insofar as they purport to challenge the district court's denial of their motion for a preliminary injunction.  Therefore, we dismiss that portion of the appeal.

**B**

Not distracted by Plaintiffs-Appellants' arguments regarding the court's denial of the motion for a preliminary injunction, Defendants-Appellees focus their response

---

[10]     We acknowledge that the unpublished decisions cited herein are not controlling authority or otherwise binding on us.  We only cite them as persuasive aids in resolving the material issues before us.  *See, e.g.*, *Bear Creek Trail, LLC v. BOKF, N.A.,* 35 F.4th 1277, 1282 n.8 (10th Cir. 2022); *United States v. Engles*, 779 F.3d 1161, 1162 n.1 (10th Cir. 2015).

on the correct order: the district court's order granting them summary judgment. Yet in addition to defending the court's order on the merits, Defendants-Appellees contend that any challenge to that order by Plaintiffs-Appellants is moot. Specifically, they contend that this is so due to the policy change following the district court's December 18, 2020, order that in-person learning could resume in all New Mexico school districts.

In support of their mootness argument, Defendants-Appellees argue that the recognized mootness exceptions do not apply—that is, neither the capable-of-repetition-yet-evading-review exception nor the voluntary-cessation exception—because "there is no *reasonable* expectation that Plaintiffs will be subject to the same challenged action again," especially given that there is no history of Governor Lujan Grisham "reimposing in-person learning restrictions on public schools," and there is no evidence she would do so in the future. Aplees.' Resp. Br. at 23–25 (emphasis in original). In reply, Plaintiffs-Appellants cursorily contend that the capable-of-repetition-yet-evading-review exception applies—without providing any support for this assertion or explaining how there remains a threat that in-person learning restrictions may be reimposed in New Mexico schools.

It is axiomatic that before reaching the merits of any case, federal courts must first establish their subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). However, they need not definitively opine on the existence of such jurisdiction when they are able to dispose of the case on another, non-merits threshold ground. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping*

17

*Corp.*, 549 U.S. 422, 431 (2007) (noting that "jurisdiction is vital only if the court proposes to issue a judgment on the merits" (quoting *Intec USA, LLC v. Engle*, 467 F.3d 1038, 1041 (7th Cir. 2006))).

The Supreme Court has recognized that "[i]t is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999). This is because a "court that dismisses on . . . non-merits grounds . . . *before* finding subject-matter jurisdiction, makes no assumption of law-declaring power." *Id*. at 584 (emphasis added) (quoting *In re Papandreou*, 139 F.3d 247, 255 (D.C. Cir. 1998)). Accordingly, when presented with multiple, non-merits potential grounds for dismissal, "a federal court has leeway 'to choose among [them] for denying audience to a case on the merits'"—without deciding the question of its subject-matter jurisdiction. *Sinochem*, 549 U.S. at 431 (quoting *Ruhrgas*, 526 U.S. at 585); *see also Levin v. Com. Energy, Inc.*, 560 U.S. 413, 432 (2010) (citing *Sinochem* for the proposition that a "federal court has flexibility to choose among threshold grounds for dismissal").

When choosing between jurisdictional and non-jurisdictional non-merits, threshold grounds, considerations of "convenience, fairness, and judicial economy" may counsel in favor of sidestepping a jurisdictional issue and instead reaching a disposition on a non-merits, non-jurisdictional threshold ground. *Sinochem*, 549 U.S. at 423; *cf. Chegup v. Ute Indian Tribe of Uintah and Ouray Rsrv.*, 28 F.4th 1051, 1069 (10th Cir. 2022) (reversing the district court and holding that it should have

18

first considered the non-jurisdictional, threshold ground of tribal exhaustion because, even though a "court generally has discretion to choose among multiple threshold grounds for dismissing a case," "not all grounds for dismissal are created equal, and some matters are properly resolved before others").

Here, we resolve this case on a non-merits, threshold ground, exercising our discretion under *Sinochem* and its progeny to do so without opining on the propriety of our subject-matter jurisdiction. Specifically, consistent with our precedent, we conclude that the deficiencies of Plaintiffs-Appellants' briefing are so pervasive and serious that they have waived our review of their challenges. Therefore, even though we have no occasion to speak concerning the legal propriety of the district court's comprehensive and thorough order, we affirm.

We repeatedly have declined to consider appellants' claims on the merits based on inadequate briefing in their opening brief. *See, e.g.*, *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (noting that "we routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief"). And, as directly relevant here, we have done so in lieu of determining whether we lacked jurisdiction over a challenged claim due to alleged mootness. *See United States v. Fisher*, 805 F.3d 982, 990 n.2 (10th Cir. 2015) (acknowledging that "[w]e ordinarily decide subject matter jurisdiction questions such as mootness before addressing other issues," but pursuant to *Sinochem*, the challenged claim could be resolved on the non-merits ground of "inadequate briefing"); *cf. Bishop v. Smith*, 760 F.3d 1070, 1096 n.19 (10th Cir. 2014) ("Because

19

the plaintiffs' . . . theory is forfeited, there is no need to consider [the defendant's] arguments [that the theory] is foreclosed by the plaintiffs' lack of standing to challenge that provision.").  We follow a similar path here—eliding, as we may, the question of mootness—and determining that Plaintiffs-Appellants have waived our merits review of their claims through inadequate briefing.

In particular, we conclude that, under the circumstances here, considerations of convenience and judicial economy counsel in favor of resolving this appeal on the non-jurisdictional ground of waiver through inadequate briefing, and we sidestep the jurisdictional, mootness issue.  For reasons detailed below, this case may be readily disposed of on the ground of waiver through inadequate briefing and so this non-jurisdictional, threshold ground "weigh[s] heavily in favor of dismissal."  *Sinochem*, 549 U.S. at 436.  To be sure, the Supreme Court has suggested that jurisdictional questions frequently involve "no arduous inquiry" such that, at least in certain cases, considerations of convenience and judicial economy may lead a court to favor resolving the jurisdictional question, rather than the threshold, non-jurisdictional one. *Sinochem*, 549 U.S. at 436 (quoting *Ruhrgas*, 526 U.S. at 587).  Yet we are not obliged to definitively opine on whether the jurisdictional mootness issue here can be reasonably characterized as "arduous" before following an alternate, non-merits path, and we see no need to do so.  What can be safely said, however, is that the task of resolving the jurisdictional question before us would not be entirely free of travail and complexity.

20

Specifically, we would need to consider facts outside of the district-court record that have evolved and continue to evolve with the peaks and valleys in the spread of the COVID-19 virus. Further, we recognize that courts have reached different and (at least on the surface) conflicting outcomes on similar mootness questions. *Compare Danville Christian Acad., Inc. v. Beshear*, --- U.S. ----, 141 S. Ct. 527, 527–28 (2020) (holding that the case was moot where "[t]he Governor's school-closing Order effectively expires this week or shortly thereafter, and there is no indication that it will be renewed"), *and Eden, LLC v. Justice*, 36 F.4th 166, 171–72 (4th Cir. 2022) (dismissing the plaintiffs' appeal as moot and holding that the voluntary-cessation doctrine did not apply, even though West Virginia remained in a state of emergency, because the COVID-19 executive orders at issue had already been terminated, no new restrictions had been imposed, and there was no evidence that the governor would reimpose any COVID-19 restrictions in the future), *with Tandon v. Newsom*, --- U.S. ----, 141 S. Ct. 1294, 1297 (2021) (per curiam) (holding that applicants were entitled to an injunction and their claims were not moot even though the California officials had changed the policy at issue because "officials with a track record of 'moving the goalposts' retain authority to reinstate those heightened restrictions at any time" (quoting *S. Bay Pentecostal Church v. Newsom*, --- U.S. ----, 141 S. Ct. 716, 720 (2021) (statement of Gorsuch, J.))), *and Roman Cath. Diocese v. Cuomo*, --- U.S. ----, 141 S. Ct. 63, 68 (2020) (per curiam) (holding that the case was not moot and injunctive relief was still appropriate even though the New York governor had relaxed the restrictions on attendance at religious services in certain

21

areas because the challenged order was still in effect and the governor "regularly chang[ed] the classification of particular areas without prior notice," and, consequently, "the applicants remain[ed] under a constant threat that the area in question will be reclassified").

When the foregoing circumstances are considered and weighed against our assessment that the inadequate-briefing rationale provides a ready basis for disposing of this case, we conclude that considerations of convenience and judicial economy in this instance militate in favor of that non-jurisdictional, non-merits resolution. *Cf. Sinochem*, 549 U.S. at 436 ("[W]here subject-matter jurisdiction . . . is difficult to determine, and [the threshold non-jurisdictional issue] weigh[s] heavily in favor of dismissal, the court properly takes the less burdensome course."). We turn now to explain the basis for our conclusion regarding the inadequacy of Plaintiffs-Appellants' briefing.

## C

Plaintiffs-Appellants' briefing is inadequate to support our merits review. Accordingly, we deem any challenges that Plaintiffs-Appellants may have to the district court's December 18, 2020, final order granting the Defendants-Appellees' converted motion for summary judgment to be waived. The ineluctable consequence of that ruling is that we affirm the court's judgment without reaching the merits.

## 1

As we have discussed, Plaintiffs-Appellants spend a great deal of their briefing—and, most relevantly, their Opening Brief—attacking the district court's

denial of their motion for a preliminary injunction. Yet for reasons we have explicated, any challenge to that order is moot, and, consequently, we lack jurisdiction over it. To the extent that Plaintiffs-Appellants seek to attack the court's final resolution of the merits of their claims, we have jurisdiction over their arguments. But that fact will not avail them because their arguments are so inadequate that we properly decline to review them.

To begin, Plaintiffs-Appellants expressly purport to challenge the court's ruling on what, in effect, is a superseded and non-operative motion—Defendants-Appellees' motion to dismiss. And the consequences of this error are grave for the adequacy of Plaintiffs-Appellants' merits arguments: that is because Plaintiffs-Appellants' confusion regarding the motion appealed from results in Plaintiffs-Appellants invoking the wrong standard for considering their challenge—one focused on the sufficiency of the factual averments of their complaint, rather than correctly on the sufficiency of their evidence—and Plaintiffs-Appellants framing their arguments under that wrong standard.

Specifically, besides noting in their Opening Brief's Statement of Issues their moot challenge—i.e., "[d]id the lower court err in denying Plaintiffs' Motion for Preliminary Injunction?"—Plaintiffs-Appellants state one, and only one, additional challenge. Aplts.' Opening Br. at 1. They expressly raise the following issue: "[d]id the lower court err in granting Defendants' Motion *to Dismiss* for failure to state a claim . . . ?" *Id.* (emphasis added). But recall that Defendants-Appellants' motion to dismiss actually had been superseded when the district court entered the December

18 order and judgment appealed from here. That is, with the parties' consent, the court converted the motion to dismiss into a motion for summary judgment. It was the court's ruling on this converted motion for summary judgment, on December 18, that finally resolved the merits of Plaintiffs-Appellants' claims. Therefore, at the outset of their briefing, Plaintiffs-Appellants critically misfire—attacking the court's supposed ruling on a motion that actually had been eliminated from consideration.[11]

As a consequence, Plaintiffs-Appellants invoke the wrong standard for our consideration of their merits challenges—focusing on factual averments of the complaint rather than evidence in the summary judgment record. In this regard, Plaintiffs-Appellants purport to advise us in resolving their challenges that "appellate

---

[11]     To be sure, at the end of its December 18, 2020, Memorandum Opinion and Order, the district court stated that "Defendants' Motion to Dismiss, filed October 26, 2020 (Doc. 43) is granted." *Hernandez III*, 508 F. Supp. 3d at 1011; *see also* Aplts.' Supp. Br. at 1. But the district court did so after explaining that it had converted the motion to dismiss into a motion for summary judgment pursuant to the parties' consent, and critically, after describing the undisputed material facts, laying out the standard governing motions for summary judgment in detail, and analyzing Plaintiffs-Appellants' claims under the summary judgment standard. Contrary to Plaintiffs-Appellants' assertion, *see* Aplts.' Supp. Br. at 4, the district court explicitly granted summary judgment to Defendants-Appellees on the constitutional and IDEA claims because it found no dispute as to any material fact and concluded that Defendants-Appellees were entitled to judgment as a matter of law. *See Hernandez III*, 508 F. Supp. 3d at 973 (holding "Defendants did not violate the Plaintiffs' procedural due process, substantive due process, or equal protection rights," and "grant[ing] summary judgment on the Plaintiffs' constitutional claims, because there is no genuine issue of material fact, and the Defendants are entitled to judgment as a matter of law"); *id.* (holding "Plaintiffs' IDEA claims cannot proceed" in part "because [Ms.] Woodworth's IDEA claims are moot" and that "summary judgment in favor of the Defendants is appropriate"). Thus, on appeal, Plaintiffs-Appellants needed to address the court's ruling on Defendants-Appellees' motion for summary judgment, not the superseded motion to dismiss.

24

court[s] must 'accept all the well-pleaded allegations . . . as true and construe them in the light most favorable to the non-movant.'" *Id*. at 2 (quoting *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1368 (10th Cir. 2015)). Instead, Plaintiffs-Appellants should have informed us that the determinative question is whether the record evidence supported Defendants-Appellees' contention that "there is no genuine dispute of material fact" and that they are "entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

This is not a hyper-technical matter. Presumably operating under a misapprehension concerning the type of motion at issue here, Plaintiffs-Appellants do not present arguments in their Opening Brief related to why the district court erred in granting summary judgment. Indeed, as we have noted, Plaintiffs-Appellants' Opening Brief is devoid of the words "summary judgment." Yet it is beyond peradventure that "[t]he first task of an appellant is to explain to us why the district court's decision was wrong." *Nixon*, 784 F.3d at 1366.

"We cannot rule on those issues the appellant does not bring to our attention." *Fisher*, 805 F.3d at 991; *see also Bronson*, 500 F.3d at 1104. In order for us to address the dispositive district-court order that is actually at issue here, we would have to fill in the gaps of Plaintiffs-Appellants' arguments and construct the logical links—under the proper substantive standards—tying those arguments to the district court's order granting Defendants-Appellees' converted motion for summary judgment. But "[w]e aren't required to fill in the blanks of a litigant's inadequate

25

brief," and we discern no reason to do so here.  *United States v. Banks*, 884 F.3d 998, 1024 (10th Cir. 2018).

More specifically, we are not inclined to construe Plaintiffs-Appellants' Opening Brief as raising a challenge to the district court's grant of summary judgment.  By framing their brief and the issues on appeal as challenging the grant of a motion to dismiss, Plaintiffs-Appellants have waived any arguments about the district court's grant of summary judgment—that is, they have waived any arguments challenging the district-court order at the heart of this appeal.  *See Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011) ("The argument section of Plaintiffs' opening brief does not challenge the court's reasoning on this point. We therefore do not address the matter.").  Accordingly, on this independent threshold basis, we uphold the district court's judgment—without reaching the underlying merits.

**2**

Nevertheless, lest there be any doubt concerning the outcome were we to exercise our discretion in this way, we note that, even if we were to construe Plaintiffs-Appellants' appeal as a challenge to the district court's grant of summary judgment, we would conclude that they have waived our review of the merits.  That is, Plaintiffs-Appellants fail to adequately raise arguments for why the grant of *any* form of dismissal should be reversed.[12]  To be sure, Plaintiffs-Appellants do mention

---

[12]    After the parties filed their merits briefs, we directed the parties to file supplemental briefing addressing, among other things, the following question: "why this appeal should not be dismissed because of Plaintiffs-Appellants' failure to adequately address the district court's grant of summary judgment in their opening

the dismissal of their claims in their Opening Brief's Statement of Issues, Standard of Review, Statement of the Case, Statement of Relevant Facts, and Summary of the Argument. But they do so only in cursory fashion. And, importantly, they do not even mention in the Argument of their Opening Brief the court's grant of a dispositive motion regarding their claims. That is not good enough. *See* FED. R. APP. P. 28(a)(8)(A) (noting that "the argument" section "must contain" "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *accord Burke v. Regalado*, 935 F.3d 960, 1014 (10th Cir. 2019).

More generally, Plaintiffs-Appellants' briefing fails to meaningfully explain why the district court's dismissal was supposedly erroneous. Indeed, the Opening Brief is bereft of sufficient factual or legal arguments engaging with the district court's thorough analysis that would allow this court to appropriately review the court's order. For instance, as to their procedural due process claim, Plaintiffs-Appellants do not mention the state's power to act through "summary administrative

---

brief?" Order, No. 20-2176, at *1 (10th Cir., Sept. 8, 2021). In response, Plaintiffs-Appellants argue that "while the phrase 'summary judgment' is not used in Appellants' briefing, Appellants' arguments are all geared towards discussing the evidence presented." Aplts.' Suppl. Br. at 1. Plaintiffs-Appellants thus request that this court construe their Opening Brief as a challenge to the district court's grant of summary judgment and further argue that they still satisfy the requirements to prevail in their appeal because their Opening Brief cited to evidence indicating a genuine dispute of material fact and addressed the legal errors in the district court's summary-judgment order. But Plaintiffs-Appellants do not actually identify where they made such factual or legal arguments in their Opening Brief. And, thus, we are unpersuaded.

action" during an emergency or, absent an emergency situation, the sufficiency of general notice as provided by law to satisfy procedural due process for a quasi-legislative action; yet both of these rationales were central to the district court's conclusion that Plaintiffs-Appellants were not entitled to any additional due process.

Similarly, on their substantive due process claim, Plaintiffs-Appellants argue that there is a fundamental right to a basic education, but they do not make any specific arguments in support of a fundamental right to an *in-person* education. However, whether there is a fundamental right to an *in-person* education is the question on appeal. In particular, Plaintiffs-Appellants do not offer any arguments in their Opening Brief to negate the district court's reasoning that "(i) the Plaintiffs have not demonstrated the historical importance of an in-person education rather than remote instruction; (ii) the Plaintiffs have not demonstrated that a temporary pause on in-person learning will make it impossible for the Plaintiffs to access other fundamental liberties; [and] (iii) the Plaintiffs have not sufficiently defined the contours of their proposed right." *Hernandez III*, 508 F. Supp. 3d at 983. Therefore, Plaintiffs-Appellants' Opening Brief does not provide any basis to review whether the district court's application of rational-basis scrutiny was erroneous.

As for their IDEA claim, Plaintiffs-Appellants argue that nearly all disabled students require in-person teaching in order to receive a FAPE, and so the Reentry Guidance violates Ms. Woodworth's daughter's rights under the IDEA by having her participate through a virtual classroom. But these arguments ignore the district court's prior finding in *Hernandez I* that the Reentry Guidance does not prohibit in-

28

person education for students with disabilities and that Ms. Woodworth's daughter's IEP needed to be re-evaluated to provide her with such an in-person education. *See* 494 F. Supp. 3d at 1148–50. Plaintiffs-Appellants further ignore the district court's procedural and jurisdictional reasons for dismissing the IDEA claims—that is, that Ms. Woodworth's IDEA claims are now moot because of the court's rulings in *Hernandez I,* and the court lacked jurisdiction to consider any remaining challenge because Plaintiffs-Appellants did not demonstrate that the administrative process had been exhausted. Therefore, as with their constitutional claims, because Plaintiffs-Appellants do not meaningfully engage with the district court's reasoning, they provide us with no basis to review any ostensible challenge to the court's disposition of their IDEA claim.

In sum, because Plaintiffs-Appellants do not provide us with arguments addressing the district court's analysis of the underlying issues in this case, there is no opportunity for meaningful appellate review. *See Utah Env't Cong. v. Bosworth*, 439 F.3d 1184, 1194 n.2 (10th Cir. 2006) ("An issue mentioned in a brief on appeal, but not addressed, is waived."); *Phillips v. Calhoun*, 956 F.2d 949, 954 (10th Cir. 1992) ("[I]ssues designated for review are lost if they are not actually argued in the party's brief."); *see also Legacy Church, Inc. v. Collins*, 853 F. App'x 316, 317 (10th Cir. 2021) (unpublished) (stating that "[t]hough Legacy Church briefly acknowledges the district court's dismissal of the action in its opening brief's jurisdictional statement, it is never mentioned again," and concluding that "[a]rguments not included in the opening brief are waived").

29

We have explained that "bald assertions," *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998), and "[s]cattered statements in the appellant's brief," *Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1133 n.4 (10th Cir. 2004), that would "compel us to scavenge through [the] brief for traces of argument," *Fisher*, 805 F.3d at 991, do not adequately raise issues for appellate review.  We are not in the business of making arguments on behalf of parties.  *See United States v. Yelloweagle*, 643 F.3d 1275, 1284 (10th Cir. 2011) (noting that we will not "make arguments for" a litigant).  Yet at the end of the day that is what Plaintiffs-Appellants would effectively call on us to do here—based on their repeated failure to make arguments explaining why the district court's dispositive motion was erroneous or otherwise engaging with the district court's reasoning.

Their briefing failure is especially problematic given the complexity of the substantive issues raised by this appeal and the extensive and thorough nature of the district court's analysis.  Plaintiffs-Appellants' arguments give us no principled basis to delve into those complicated issues, much less second-guess the propriety of the district court's reasoning.  *Cf. United States v. Lamirand*, 669 F.3d 1091, 1098 n.7 (10th Cir. 2012) ("[T]he argument is not adequately presented to us. [The defendant] does not even identify this distinct argument in his statement of appellate issues, much less elaborate in the brief on its substantive premises. Instead, [the defendant] puts forward only a couple of stray sentences in his briefs and does not cite to any authority that even remotely supports the argument. Given the apparent complexity of

30

this issue of statutory interpretation . . . we are reluctant to definitively opine on its merits without a full adversarial framing of the relevant considerations.").

Therefore, even if we were to overlook Plaintiffs-Appellants' error in misconceiving the dispositive order under review here—i.e., the court's grant of Defendants-Appellees' converted motion for summary judgment—we would still conclude that Plaintiffs-Appellants have waived appellate review through their failure to make meaningful arguments—backed by citations to the record and legal authority—challenging the district court's analysis.

## IV

For the foregoing reasons, we **DISMISS** Plaintiffs-Appellants' appeal insofar as it challenges the district court's denial of their motion for a preliminary injunction and otherwise **AFFIRM**—without reaching the merits—concluding that Plaintiffs-Appellants have waived any arguments for reversing the district court's grant of summary judgment through their woefully inadequate briefing.

ENTERED FOR THE COURT

Jerome A. Holmes
Chief Judge

31